J. KIEFER NEWMAN, JR., AND ANNE S. NEWMAN, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2311. Promulgated October 20, 1944.

*Morley S. Wolfe, C. P. A.*, for the petitioners.
*Scott A. Dahlquist, Esq.*, for the respondent.

### OPINION.

OPPER, *Judge*: Deficiencies in income tax were determined against petitioners for the years 1938, 1939, 1940, and 1941 in the respective amounts of $1,078.14, $879.02, $420.13, and $1,450.79. This proceeding places in issue the correctness of portions of such deficiencies. The sole question relates to the proper basis of certain stock transferred to the trust of which petitioner J. Kiefer Newman, Jr., was a beneficiary and which he sold in the years in issue. The controversy is whether this sale resulted in a loss computed by ascribing to the stock the basis of the grantors of the trust under section 113 (a) (3), Internal Revenue Code and Revenue Act of 1938, or resulted in no loss because, pursuant to section 113 (a) (2), it takes the basis of fair market value at the time of distribution to him, that being lower than the basis of the donors.

All of the facts are stipulated and are hereby found accordingly. Petitioners filed joint income tax returns for all of the tax years with the collector for the second district of New York.

The trust in question was created December 20, 1924, by the father and mother of petitioner J. Kiefer Newman, Jr., who will hereinafter generally be referred to as petitioner. The grantors and Powell G. Groner were named as trustees, but the latter resigned sometime in 1925 and since then the grantors have apparently been the sole trustees. Among the assets of the trust were voting trust certificates for 5,000 shares of common stock of Polman Co., of which the basis to the grantors was $23.99 a share and of which the fair market value upon their assignment to the trust was no less.

The trust instrument envisages an equal division among the grantors' four children, but provides:

(a) The Trustees shall have the right and power at any time and from time to time, during the existence of this trust, in their absolute and uncontrolled discretion and for reasons sufficient to them, to withhold from any one or more of the Children or from all of them * * * the Net Income, or any portion thereof, provided herein to be made to any such Child * * *.

(b) The Trustees shall have the right and power at any time and from time to time, during the existence of this trust, in their absolute and uncontrolled discretion and for reasons sufficient to them, to withdraw or withhold from any one or more of the Children, or from all of them  * * *  the principal of the Part, or any portion thereof, held hereunder for the benefit of any such Child and/or its issue, and to pay or transfer such principal, or any portion thereof, to the other Children, or to any one or more of them * * *.

This authority was by a subsequent provision limited to expire "if at any time said J. K. Newman and/or Mae P. Newman [the grantors] shall not be a trustee hereunder."

Acting pursuant to their authority to make distribution of the principal of the trust, the trustees distributed voting trust certificates for common stock of Polman Co. to the beneficiaries, including petitioner. Some of such distributions were subsequent to a reclassification of the Polman Co. common stock, pursuant to which it was exchanged one new share for twenty old.

The stipulation recites that:

8. The petitioners sold voting trust certificates for common stock of Polman Company and claimed losses upon said sales of voting trust certificates as long-term capital losses in their income tax returns for the respective calendar years 1938, 1939, 1940 and 1941, as follows:

LONG-TERM CAPITAL GAINS AND LOSSES—ASSETS HELD FOR MORE THAN 24 MONTHS

| Kind of Property | Date Acquired | Date Sold | Gross Sales | Cost or Other Basis | Gain or Loss | Gain or Loss to be Taken Account | |
|---|---|---|---|---|---|---|---|
| | | | | | | Percentage | Amount |
| | | | | | *Loss* | | |
| Polman Co. common | 12/19/24 | 12/18/38 | $8.11 | $20,391.50 | $20,383.39 | 50 | $10,191.68 |
| 40 shs. Polman Co. common | 12/19/24 | 12/27/39 | 3.26 | 19,192.00 | 19,188.74 | 50 | 9,594.37 |
| 12 shs. Polman common | 12/20/24 | 12/19/40 | 1.54 | 5,757.60 | 5,756.06 | 50 | 2,878.03 |
| 32½ shs. Polman Co. common | 12-1924 | 12-1941 | 6.62 | 15,590.25 | 15,583.63 | 50 | 7,791.81 |

The number of shares sold in 1938 was 42½. The voting trust certificates sold had at the time of their distribution to petitioner a fair market value equal to the respective selling prices.

Respondent disallowed the loss of $10,191.68 for the year 1938, with the explanation:

Long-term capital losses claimed upon the sale of Polman Company common stock are not allowable deductions under the provisions of section 23 of the Revenue Act of 1938 or of the Internal Revenue Code because it is determined that the value of said stock at the date it was acquired by the taxpayer was not in excess of the selling price obtained therefor.

Similar disallowances for the three subsequent years were accompanied by an identical explanation.

Since the decision in *Edward T. Bedford Trust*, 42 B. T. A. 748; affd. (C. C. A., 2d Cir.), 123 Fed. (2d) 819, and *Commissioner* v. *Warren*

*Webster Trust No. 1* (C. C. A., 3d Cir.), 122 Fed. (2d) 915, affirming a memorandum decision of the Board of Tax Appeals, it has been settled that property acquired by means of a trust is governed as to basis by the provisions of section 113 (a) (3),[1] and not section 113 (a) (2),[2] notwithstanding that it may have constituted a gift. Although these cases dealt with the computation of gain or loss upon a disposition of property by the trustee, no suggestion appears that a different result would be called for upon a sale by the beneficiary after distribution to him from the trust, and the reasoning supporting all three opinions is equally applicable to the latter situation. Indeed, respondent's regulation, which was amended to give effect to the result of those cases, specifically adopts the interpretation that "this basis applies whether the property be in the hands of the trustee or the beneficiary and whether prior to the termination of the trust and distribution of the property or thereafter." Regulations 103, sec. 19.113 (a) (3) (1); T. D. 5137, 1942–1 C. B. 110.

It does not in our view constitute a valid distinction that in the present case the income of the trust may have been taxable to the grantor, see *Commissioner* v. *Buck* (C. C. A., 2d Cir.), 120 Fed. (2d) 775, nor that, by reason of the grantor's retained power to alter the designation of beneficiaries or their interests, the gift would not be regarded as complete for gift tax purposes. *Commissioner* v. *Sanford's Estate*, 308 U. S. 39. It is too well known to warrant extended discussion that, although there may be a limited comparability between the estate and gift tax provisions (see *Commissioner* v. *Sanford's Estate*, *supra*, but cf. *Smith* v. *Shaughnessy*, 318 U. S. 176), there is no such parallel with the income tax title. See, e. g., *Estate of Payson Stone Douglass*, 2 T. C. 487; affd. (C. C. A., 3d Cir.), 143 Fed. (2d) 961. In *Welch* v. *Bradley* (C. C. A., 1st Cir.), 130 Fed. (2d) 109; certiorari denied, 317 U. S. 685, the grantor was taxed on the income of a trust, under the express direction of section 166, a deduction for depreciation being computed on the grantor's original basis. We perceive no inconsistency between this and the allocation of the

---

[1] Internal Revenue Code and Revenue Act of 1938—
"SEC. 113 * * *
  "(a) * * *

      *      *      *      *      *      *      *

"(3) TRANSFER IN TRUST AFTER DECEMBER 31, 1920.—If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a bequest or devise) the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made."

[2] *Idem*—
"(2) GIFTS AFTER DECEMBER 31, 1920.—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift, except that for the purpose of determining loss the basis shall be the basis so determined or the fair market value of the property at the time of the gift, whichever is lower. * * *"

statutory basis to a beneficiary where the disposition is made not by the trust, but by the beneficiary, and where there is no contention that the tax consequence of the transaction is thus attributable to the grantor. As we said in *Minnie M. Fay Trust "A,"* 42 B. T. A.765, 768:

> None of the above mentioned income and estate tax principles contradict the juristic transfer of title from the grantor to the trustees. * * * For the purposes of this case, they are not pertinent, since we are not concerned with the tax liability of the grantor or his testamentary estate, but only with the basis to be used * * * on a sale of capital assets * * *.

Nor does the amendment enacted by Revenue Act of 1942, section 143, expressly including gifts in trust in the provisions relating to gifts generally, affect this result, since the change was not made retroactive and is not even characterized as declaratory of existing law. H. Report 2333, 77th Cong., 2d sess., p. 92; S. Report 1631, 77th Cong., 2d sess., p. 114. The better argument under these circumstances is that the legislative view that a change is necessary confirms the established interpretation as to periods prior to the amendment. *Spring City Foundry Co.* v. *Commissioner*, 292 U. S. 182, 187; *Brewster* v. *Gage*, 280 U. S. 327, 329.

Incidentally, it would not advantage respondent here for us to agree that this was a gift under 113(a)(2), rather than a transfer in trust under 113(a)(3), even if the question were open as though the *Bedford* and *Webster* cases had not been decided. For, unlike the situation in those cases, it is stipulated here that fair market value when the trust was created was at least equal to the donor's basis. Thus, if the creation of the trust constituted the gift as respondent's regulations originally inferred,[3] the petitioner would still be entitled to the claimed basis.

Presumably, to avoid this, we are asked to find that this property was not "acquired" by the beneficiary from the trust, but, due to the revocable character of his interest, was acquired by gift direct from the grantors and hence was not a transfer in trust at all, but a gift under subdivision (2) made only when petitioner physically received the distributions. This strikes us as an unsuccessful effort to mold the language of the statute to a situation that did not occur. The trust was in terms irrevocable and distributions were limited to the children of the grantors. Petitioner received the property in question not by a revocation of the trust which was unauthorized, nor by a distribu-

---

[3] "All titles to property acquired by gift relate back to the time of the gift, even though the interest of him who takes the title was, at the time of the gift, legal, *equitable,* vested, contingent, *conditional,* or otherwise. Accordingly, all property acquired by gift is acquired at the time of the gift. In the hands of every person acquiring property by gift, the basis is always the same, whether such person be *the trustee under the gift instrument, the beneficiary,* or any other person to whom such uniform basis is applicable, *and whether during the term of the trust* or *after distribution* of the trust corpus." [Regulations 103, sec. 19.113(a)(2)–1(b). Emphasis added.]

tion to the grantors and a gift from them which was no more permissible. The action taken was in direct conformity with the trust instrument, and was possible only because the trust instrument made express provision for it. The grantors could equally have distributed the property to one of their other children, but could not have conferred it upon a stranger. We have no difficulty in concluding that their action was, and was required to be, that of grantors under the trust instrument and not that of donors, free from its restrictions.

The property was clearly transferred in trust and as clearly acquired by petitioner by the transfer in and out of the trust. See *Minnie M. Fay Trust "A," supra.* His title had its "origin" in the trust. *Helvering* v. *Reynolds*, 313 U. S. 428. That it was the consequence of action on the part of the grantors which they were not required to take can no more characterize it as a gift severed from the trust's existence than could the equally gratuitous creation of other trusts classify the result as a gift unrelated to the transfer in trust. *Edward T. Bedford Trust, supra; Commissioner* v. *Warren Webster Trust No. 1, supra.*

It follows that the provisions of section 113(a) (2), limiting the basis for computing a loss deduction to fair market value, if that is lower than that of the donor, have no application to the present situation. and that under the provisions either of subdivision (a) (2) or of (a) (3) prescribing in all instances the grantors' adjusted basis, petitioner selected the correct basis in the present instance. Because of other issues now conceded by petitioners,

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

Murdock, *J.*, dissenting: A transfer in trust is recognized here solely for the purpose of giving a favorable basis, whereas the transfer would not be recognized in any other way for tax purposes. I think Congress did not refer in section 113 (a) (3) to this kind of a transfer in trust. It would not have been recognized as a transfer for gift tax purposes or for income tax purposes because of the grantors' retained power to alter the beneficiaries and change the interests which they were to receive. The *Bedford* and *Webster* cases are different in this respect and, therefore, are distinguishable. The gift took place only when the property was removed from the trust. Therefore, it seems more appropriate to me to apply section 113 (a) (2). The value of the property at the time a gift was made, which was recognized for gift tax purposes, was no greater than the amount for which the property was thereafter sold, and no deduction for loss should be allowed.

Smith, Arnold, and Hill, *JJ.*, agree with this dissent.