ESTATE OF MARGARET P. GALLOIS, DECEASED, JOHN E. GALLOIS, EXECUTOR, AND JEANNE G. HILL, EXECUTRIX, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3507. Promulgated February 27, 1945.

*John V. Lewis, Esq.*, *Clyde C. Sherwood, Esq.*, and *Jerome Politzer, Esq.*, for the petitioners.

*T. M. Mather, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge*: The issue for our determination is whether or not the corpus of the trust created by the decedent on August 9, 1924, is includible in her gross estate under the provisions of section 811

(c) of the Internal Revenue Code. The section is set forth in the margin.[1]

The petitioners contend that no part of the trust is includible in the decedent's gross estate under section 811 (c), but that it is squarely within the provisions of that section excepting "a bona fide sale for an adequate and full consideration in money or money's worth." They premise their argument on the following:

By December 1927 the statute of limitations had run on John Gallois' indebtedness to the decedent and he was under no legal obligation to pay any part thereof; furthermore, prior to the payments by him, the trust properties had no value, since they were encumbered to an extent in excess of their fair market value. Therefore, conclude the petitioners, the payment by John Gallois, which he was not legally obligated to make, and which gave value to the trust properties, constituted the payment of a full and adequate consideration for a one-half interest in the trust, and brings the case within the exception provided in section 811 (c).

We are not impressed by this contention. Although the statute of limitations may have run on the indebtedness so as effectively to bar an action by the decedent for its payment, there can be no doubt that the obligation itself remained. The statute of limitations merely bars the remedy of the creditor, but does not totally discharge the right. Williston on Contracts, vol. 6, sec. 2002. The fact that a debt is barred by the statute of limitations in no way releases the debtor from his moral obligation to pay it. *Booth* v. *Hoskins*, 75 Cal. 271; 17 Pac. 225. John Gallois admitted that he recognized his moral obligation to his mother and the testimony indicates that both he and the decedent considered his payments as a discharge of this obligation. It is clear, we think, that the payments constituted the satisfaction of this debt and not a sale and that the petitioners' contention can not be sustained.

We turn, therefore, to a consideration of the other provisions of sec-

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT DEATH.—To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter.

tion 811 (c). It should be noted at the outset that, since the trust was created prior to the joint resolution of March 3, 1931, the corpus is not taxable solely because of the fact that the decedent reserved to herself the trust income during her life, *Hassett* v. *Welch*, 303 U. S. 303; *May* v. *Heiner*, 281 U. S. 238; *Estate of Edward E. Bradley*, 1 T. C. 518, and the respondent does not contend otherwise.

The respondent contends that the corpus of the trust must be included in the decedent's gross estate as a transfer intended to take effect in possession or enjoyment at or after death, since the trust instrument provided that the corpus might be invaded for the benefit of the settlor, and hence it could not be determined until that time whether any of the trust would pass to the named remaindermen.

We think this contention must be sustained. Under the terms of the trust, the trustees were authorized and directed to apply to the maintenance and support of the decedent any part of the trust corpus which, at any time, might be necessary, in their opinion, for her maintenance and support, because of any deficiency in the trust income.

The case at bar in this respect is substantially the same as that of *Blunt* v. *Kelly*, 131 Fed. (2d) 632. There the decedent created a trust providing in part that should, in their opinion, the necessity arise, the trustees were empowered to use such portion of the principal of the trust fund as might seem proper for the support, care, or benefit of the settlor. The decedent was not a trustee, but one of the trustees was her son, who was also a remainderman under the trust.

It was argued that, since one of the trustees was a remainderman and therefore had an interest adverse to that of the settlor with respect to the principal, she thereby effectively terminated her interest therein. In answer, the court said:

* * * It is true that under this provision the trustees, one of whom held an adverse interest, were required to form an opinion as to the existence of any such necessity, but in so doing the trustees were not making a free and uncontrolled decision. They were of course bound to form their opinion on the existence of any such necessity in good faith and were subject to the control of the equity courts if they failed to do so. [Citations]. Under these circumstances, * * * the transfer * * * did not take effect in possession and enjoyment until the death of the settlor since, until then, it might have become necessary under the terms of the trust to apply the principal to her support, care or benefit.

We can see no substantial difference between that case and the one before us. In fact, the instant case is stronger for the Government in this respect, since the decedent, the grantor of the trust, was also one of the trustees.

The petitioners contend, however, that the decedent relinquished this right by the oral agreement she made with her son in 1928; and that, after that time, she had no power to invade the corpus for her own benefit.

The only evidence of this agreement is found in the testimony of John Gallois. He testified that at the time he repaid his mother he insisted upon being made a trustee and on having his mother agree that the corpus would not be touched again, since he felt that, inasmuch as his mother had aided him, she might at a future date assist her daughter, who was then in straitened circumstances, or some other person. He stated that he realized that his sister's financial condition was growing worse and worse and that he wanted to have control of the trust in order to protect his sister and himself.

It does not appear from the above that the decedent and her son had more than an oral agreement that she would not again encumber the trust property in order to render financial assistance to her daughter, or some other person, as she had previously aided her son. Assuming full faith and effect be given to this agreement, there is nothing to show that the decedent relinquished the right to have the principal of the trust applied to her own use and benefit, if the necessity should arise, or that her son would object to such a use of the trust corpus. Moreover, there is no evidence as to the amount of the trust income or the financial status of the grantor. Nor is there evidence that the other trustee was ever informed of the agreement.

We are impressed by the fact that, although the trust indenture was in writing, the petitioner is relying on an alleged oral amendment to vary its terms. The normal way to effect an amendment thereof would have been by a similar written instrument.

We are of the opinion that at the date of her death the decedent, under the terms of the trust, had the right to have the trust principal applied for her support and maintenance and therefore the value of the trust is includible in her gross estate as a transfer intended to take effect in possession or enjoyment at or after death.

In view of our decision it is not necessary to consider the applicability of the other parts of section 811 (c).

*Decision will be entered for the respondent.*