ESTATE OF CAROLYN PECK BOARDMAN, NEW BRITAIN TRUST COM-PANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 35478. Promulgated July 30, 1953.

*Philip J. Woodward, Esq.*, for the petitioner.
*James R. McGowan, Esq.*, for the respondent.

OPINION.

Murdock, *Judge:* The Commissioner does not contend that the transfer in question was made in contemplation of death or that section 811 (d) applies. He relies only upon section 811 (c) (1) (B) and (C). Section 811 (c) (1) (B) includes in the gross estate the decedent's interest in property transferred in trust if the decedent retained the right to the income from the property for her life or for any period which in fact does not end before her death. The petitioner argues that the decedent did not retain the right to the income for any period

since she gave William the right, with the consent of Ronald and the trustee, to amend the trust and he could have changed it so that she would not receive the income, since she was to receive the income not as her absolute right but only as the trustees might deem it "necessary for her comfort, support and/or happiness" and since she had ample other income so that the income of the trust was not necessary for her comfort, support, or happiness.

It was not intended that anyone else should have the income from the trust so long as Carolyn lived. The petitioner, in its brief, states:

The Trust clearly contemplated payments of income or principal to the decedent "as the Trustees deem necessary for her comfort, support and/or happiness." Moreover, she did in fact receive payments from either the income or principal accounts which more or less approximated the amount of the net income of the Trust.

The petitioner further states in its brief:

The Trustees were also directed to consider her "happiness" as a basis for distributions and this was presumably the basis on which actual distributions were made. However, the word "happiness" offers no ascertainable standard to permit a court of equity to act. *Commissioner v. Merchants National Bank of Boston*, 320 U. S. 256.

Obviously, the word "happiness" offered no basis upon which the trustees could have withheld any income of the trust which the decedent might have desired during her life. This case, in which the grantor reserved and actually received the trust income, in the discretion of the trustees, for her own "comfort, support and/or happiness" is much stronger for the Commissioner than *Estate of Payson Stone Douglass*, 2 T. C. 487, affd. 143 F. 2d 961, in which the grantor reserved the trust income subject to the discretion of the trustee for the "maintenance, education and support" of a minor child. It has been held that a remainder interest to charity has no ascertainable value where the corpus could be used at the discretion of the trustee for the "comfort, support, maintenance and/or happiness" of the life tenant. *Merchants National Bank of Boston v. Commissioner*, 320 U. S. 256. See also *Henslee v. Union Planters National Bank*, 335 U. S. 595. Those two cases are not in point here but they do indicate that the word "happiness" gives the life tenant rights far greater than those given by the words "comfort," "support" and "maintenance." Cf. *Estate of Ida Rosenwasser*, 5 T. C. 1043; *Estate of Margaret P. Gallois*, 4 T. C. 840, affd. 152 F. 2d 81, certiorari denied, 327 U. S. 798; *Blunt v. Kelly*, 131 F. 2d 632. The decedent, as grantor, effectively and intentionally retained the right to the income for her life or for a period which in fact did not end before her death. The trustees had to account to her and could not resist her demand for the income, as necessary to her happiness, under the provisions of the trust even though it was not all necessary for her comfort and support.

Here the power of amendment was never exercised and the decedent effectively retained the right to the income at least for a period which in fact did not end before her death. The transfer thus comes within section 811 (c) (1) (B), section 811 (c) (2) has no application, and the Commissioner properly included trust property in the gross estate.

The remaining question is what portion of the total value of the trust should be included in the gross estate. The petitioner argues that the decedent was the grantor to the extent of 6,295,376/6,822,626ths only because Carolyn contributed only $62,953.76 while Harry contributed $68,226.26 in June 1935. Carolyn contributed an additional $5,000 four and one-half years later which, the petitioner argues, can not be regarded as a reciprocal transfer to match the 1935 transfers by Henry. The Commissioner's position as stated in his brief is that Carolyn should be treated as the grantor of the trust (created by Henry) "at least to the extent of the percentage that results from dividing $67,953.76, the total amount originating with her, by $68,226.26, the total amount originating with her husband." That is a fair solution of this point. The reason for the delay or for the second transfer by Carolyn was not explained. The petitioner concedes that Carolyn may be regarded as the grantor to the extent of her original contribution. Her second contribution, although made later, was to the same reciprocal trust. It made the two trusts approximately equal. It is not distinguishable for present purposes from her original transfer and the petitioner has not shown that the Commissioner erred by recognizing Carolyn as the grantor of the trust here in controversy to the extent of $67,953.76. Cf. *Hanauer's Estate*, 149 F. 2d 857, certiorari denied 326 U. S. 770; *Allan S. Lehman et al., Executors*, 39 B. T. A. 17, affd. 109 F. 2d 99, certiorari denied 310 U. S. 637.

The value of Series "G" bonds has been settled by the stipulation.

*Decision will be entered under Rule 50.*