Estate of Charles J. Babcock, Deceased, Richard J. Babcock, Executor of The Last Will and Testament of Charles J. Babcock, Deceased v. Commissioner.
Estate of Charles J. Babcock v. Commissioner
Docket No. 4480.
United States Tax Court
1946 Tax Ct. Memo LEXIS 284; 5 T.C.M. (CCH) 31; T.C.M. (RIA) 46001; January 21, 1946
*284 Eugene T. McQuade, Esq., 116 John St., New York 7, N. Y., for the petitioner. Clay C. Holmes, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner seeks a redetermination of a deficiency in estate tax of $16,288.51. The issue is the propriety of the inclusion of certain property conveyed in trust by decedent prior to his death in his gross estate under the provisions of Internal Revenue Code, section 811. Findings of Fact The stipulated facts are hereby found accordingly, of which the following is a summary: Decedent, Charles J. Babcock, died a resident of New York on March 7, 1942, at the age of 60 years, leaving a will dated July 11, 1939. In so far as here material it provided that if his wife, Mary Agnes Babcock, survived him, all of his property, including all of which he had power of appointment, was to go to her; that if she had predeceased him, all personal property and household effects were to be divided equally among his children living at the time of his death, and the residue of his property to his issue in equal shares per stirpes; that his wife, or on her *285 failure to qualify, his son Richard, was to be executor without bond. The will was duly admitted to probate in the Surrogate's Court of Nassau County, New York, on March 16, 1942. The estate tax return was duly filed on March 24, 1943, with the collector of internal revenue for the first district of New York. On June 2, 1932, while a resident of New York, decedent made a transfer of property in trust on the terms and conditions set forth in a written trust agreement. In so far as here pertinent the agreement provided that the trust was irrevocable; that the income was to be paid to decedent's wife for life with a power in her to appoint by will the entire corpus to their issue or to the decedent; upon the wife's death, failing the exercise of the power, the corpus was to be retained in trust with income payable to issue for life, applicable in the discretion of the trustees for "education, comfort, maintenance and support," each child having a general power of appointment by will over its own share, the sons having a right to take one-half of their share at 30 years of age, and the balance of their share at 35 years of age. Any share not appointed by a child was to be paid to *286 those persons who would have been decedent's distributees under New York law. If no issue survived the decedent's wife the trustees were to pay the income to the settlor's mother, two sisters, and a sister-in-law, and on the mother's death to distribute the principal in equal shares to the sisters and sister-in-law. The instrument also provided: (h) Anything herein contained to the contrary, notwithstanding, the Trustees if they so elect, may retain any and all amounts of principal to which each minor beneficiary may become entitled by way of distribution, until such minor shall have attained the age of twenty-one (21) years, and the Trustees, after disposing of all income held by the Trustees for any such minor, may apply as much of the principal, to which such minor shall be entitled by way of distribution as aforesaid, and as much of the income thereon as the Trustees may deem necessary or proper in their sole discretion, to provide for the education, comfort, maintenance and support of such minor; (i) The Trustees shall have authority, in the exercise of their sole discretion, to pay over and distribute, at any time and from time to time, to each of the beneficiaries of the *287 trusts herein created, who may at the time be entitled to receive the income accruing therefrom, such amounts of principal of the share from which such beneficiary shall then be entitled to receive income as the Trustees, in their sole discretion, shall deem advisable to provide for the education, maintenance, comfort or support or for any other purpose or purposes whatsoever which the Trustees shall deem for the best interests of such beneficiary; The initial trustees were the decedent and his wife, with provision for substitution of the Central Hanover Bank and Trust Company for decedent in the event of his inability or refusal to serve. Paragraph 18 of the trust instrument provided: EIGHTEENTH: Mary Agnes Babcock, wife of the Settlor, party of the second party hereto, in consideration of the making by the Settlor of this agreement and of the sale, assignment and transfer in trust of the property hereby conveyed and the provision thus irrevocably made for the maintenance, support and well being of herself and her children, does hereby waive and surrender, in their entirety, her rights accrued or inchoate under the Decedent Estate Law of the State of New York to share in and *288 take upon the death of her husband, said Settlor, any part of his property or estate, real or personal, including dower and as well her personal right of election as surviving spouse to take her share of her said husband's estate against any Last Will and Testment of Settlor as in intestacy; and this agreement of trust and the sale, assignment and transfer of the property hereby conveyed in trust and the beneficial interests hereby created on behalf of the beneficiaries herein named or designated are made for and in consideration of such surrender and waiver. The value (as of the date of decedent's death) of the property transferred in trust was $50,093.92. The value (as of the date of decedent's death) of the right of decedent's widow to receive income during her life was $20,066.12 and the value of the trust remainder was $30,027.80. In so far as the state or condition of the decedent's health was concerned the transfer was not a transfer in contemplation of death. Decedent was survived by the following persons who had interests under the trust agreement: (1) His widow, Mary Agnes Babcock, born November 24, 1881, who was 60 years of age at the time of decedent's death. *289 (2) His four children, whose names, dates of birth, and ages at the time of decedent's death are as follows: Age at
Dates
Decedent's
Names
of Birth
Death
Richard J. Babcock
Aug. 5, 1911
30 years
Lucy Ann Uhl
Oct. 17, 1913
28 years
Philip L. Babcock
Dec. 2, 1914
27 years
Elizabeth A. Wasson
Aug. 22, 1917
24 years
(3) Grandchildren: Age at
Dates
Decedent's
Names
of Birth
Death
Donald Uhl
Mar. 4, 1934
8 years
Linda Uhl
Dec. 26, 1940
1 year
Charles J. Babcock
Jan.12, 1942
2 months
(4) Sisters of decedent: Names
Addresses
Mrs. Dan C. Burns
Denver, Colorado
Mrs. Clarence M. Hawkins
Berkeley, California
(5) Mrs. Leah Spare (wife of brother of decedent's widow). (6) Mrs. Leah Spare had one son, Neil, who had two children on March 7, 1942, and daughter, Ruth, who had one child. (7) Mrs. Dan C. Burns was unmarried and had no issue. (8) Mrs. Clarence M. Hawkins, had two children, one of whom was married. At the time of decedent's death, his two daughters were married and supported by their husbands; the decedent's two sons were married, employed and self-supporting; and none of *290 the children was living with or dependent upon the decedent or his wife. The decedent and his wife acted as cotrustees under the trust agreement from the date of the agreement until the date of decedent's death. By 1937 all of the insurance on decedent's life had been converted into paid-up insurance. From evidence adduced at the hearing we find the following: No part of the principal of the trust was ever paid out to any beneficiary but it remained intact during the entire life of decedent. No part of the income of the trust was used to discharge decedent's obligation to support his wife and family. Decedent's income from compensation earned from the time the trust was created was not less than $15,000 per annum. Decedent's widow inherited $40,000 from her father in 1931. At the time of decedent's death his widow had $60,000 of property in her name, including the inheritance and profit from real estate and accumulation of trust income. Opinion According to respondent "there was no specific provision for the return of the trust corpus to decedent and the possibility of it reverting to him by operation of law * * * [is] admittedly remote." Respondent's determination *291 is overruled in this phase of the case on authority of Frances Biddle Trust, 3 T.C. 832, and Estate of Harris Fahnestock, 4 T.C. 1096, in both of which he has now acquiesced. [1]
Since the transfer in trust here under consideration was made June 2, 1932, the fact that decedent might have retained until his death "the right * * * in conjunction with any person [his wife], to designate the persons who shall possess or enjoy the property or the income therefrom" [2] does not justify the imposition of the tax. The regulations recognize that in order to come within then existing legislation, he must have had this right alone. [3]
The same section of the statute further includes within the gross estate transfers over which decedent has retained for his life "the possession or enjoyment of, or the right *292 to the income from the property." Relying upon paragraph "Eighteenth" of the trust instrument, respondent contends that this was a support and maintenance trust, and that, accordingly, decedent retained the right to the income through its application to his legal obligations. See Helvering v. Mercantile-Commerce Bank & Trust Co. ( C.C.A., 8th Cir.), 111 Fed. (2d) 224, certiorari denied, 310 U.S. 654. But giving that provision its broadest possible scope, insertion of the reference to "well-being" commits the use of the trust proceeds to a broader field than mere support, and leaves its application indefinite as between the wife and children. Expenditures for their well-being did not necessarily involve purposes for which decedent would be obligated. Estate of Norma P. Durant, 41 B.T.A. 462. The most that can be said is that the wife may have had a broad discretion which could, if she so determined, permit the use of income, and possibly of principal, for the welfare of the beneficiaries. This is far from creating in decedent the "right" to the use of the income which the statute requires. Estate of Payson Stone Douglass, 2 T.C. 487, *293 affirmed (C.C.A., 3rd Cir.), 143 Fed. (2d) 961. Respondent's determination is disapproved. The parties having agreed that adjustment of credit for state inheritance taxes may be permitted. Decision will be entered under Rule 50. Footnotes
1. Internal Revenue Bulletin, No. 21 (Nov. 12, 1945) p. 1.↩
2. Internal Revenue Code, section 811 (c)↩. 3. Regs. 105, sec. 81. 19;the dates therein mentioned being the date of the Joint Resolution of March 3, 1931, and the enactment of perfecting legislation on June 6, 1932. And see Hassett v. Welch, 303 U.S. 303↩.